OPINION
{¶ 1} Defendant-Appellant appeals the sentences and convictions entered by the Fairfield County Court of Common Pleas on one count of violation of a protective order and one count of menacing by stalking, following a trial by jury. Plaintiff-Appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On November 20, 2001, Appellant was indicted by the Fairfield County Grand Jury on one count of Violating Protection Order, in violation of R.C. § 2919.27, and one count of Menacing by Stalking, in violation of R.C. § 2903.211.
 {¶ 3} A jury trial commenced in this matter on February 5, 2002 and concluded on February 7, 2002, with said jury returning verdicts of guilty on both counts.
 {¶ 4} By Judgment Entry filed February 15, 2002, the trial court sentenced Appellant to ten (10) months on the charge of violating a protection order and fourteen (14) months on the charge of menacing by stalking in addition to a five hundred dollar ($500.00) fine on each charge. Said sentences were ordered to be served consecutively. Appellant was also granted twenty-two (22) days jail time credit.
 {¶ 5} A notice of appeal was timely filed, with Appellant assigning the following errors for review:
 ASSIGNMENTS OF ERROR I. {¶ 6} "The trial court committed reversible error by permitting jurors to ask questions of witnesses, and defendant was in fact prejudiced."
 II. {¶ 7} "The trial court committed plain error and an abuse of discretion in admitting the testimony of psychology assistant Scott Craft, licensed social worker Robert Gillies, and Angela Wolfe, such testimony having little or no probative value as to the issues of the case and having great tendency to prejudice the defendant, confuse the issues, and to mislead the jury."
 III. {¶ 8} "The prosecution evidence as to count one was legally insufficient to support a guilty verdict."
 IV. {¶ 9} "The verdict as to count one is against the manifest weight of the evidence."
 V. {¶ 10} "Consecutive sentencing was not appropriate as to Michael Eaken's convictions."
 I. {¶ 11} In his first assignment of error, appellant asserts that it was reversible error for the trial court to permit the jurors to ask questions of witnesses. We disagree.
 {¶ 12} In this case, the trial court informed the jurors at the start of the trial that they would be permitted to submit questions for the witnesses to answer (T. at 22). The judge explained that after counsel had finished questioning a witness, each juror could raise their hand and ask the court for permission to write out his or her question or could submit an already written question on a piece of paper to the bailiff who would, in turn, deliver same to the judge. (T. at 22). The judge explained to the jurors that the rules of evidence may prohibit some of their questions from being asked. (T. at 23). Some of the questions were determined not in conformance with the Ohio Rules of Evidence and were not asked; other questions were asked of the witnesses.
 {¶ 13} Appellant asserts that questioning by jurors is inherently prejudicial and violates a defendant's rights to due process and a fair trial. When the jurors are permitted to ask questions, appellant argues, (1)the jurors are no longer neutral fact finders but assume the position of advocates, and (2)that one or more of the jurors suffered some animosity toward Appellant based on Appellant being viewed to have blocked the asking of a proposed question.
 {¶ 14} The Supreme Court of Ohio has not ruled on this issue, although the question is currently pending before that court in State v.Fisher, 10th Dist. No. 01AP-614, 2001-Ohio-8772.
 {¶ 15} This court has, however, addressed the issue of jury questions previously. In State v. Mascarella (July 6, 1995), Tuscarawas App. No. 94AP100075, 1995 WL 495390, this Court set forth guidelines regarding juror questions to witnesses. This Court stated previously that "while this court has not condemned the practice of permitting jurors to pose questions, this court has set forth the following guidelines: The jurors should write down their proposed questions. Counsel for both parties and the trial court judge should review the questions for objections, on the record, outside the hearing of the jury. Once juror questions are approved by the trial court, the clerk or bailiff should read the questions to the witness." State v. Heavener (June 4, 2001), Stark App. No. 2000 CA 00339, 2001 WL 698304 (citing Huffman v. GalsticCorp., et al. (April 5, 2001), Tuscarawas App. No. 1999 AP120071; Statev. Mascarella, supra.)
 {¶ 16} The trial court sub judice followed these guidelines, with one exception. The trial court asked the questions of the witness rather than having the bailiff or clerk ask the questions. In State v.Alexander (Feb. 10, 1997), Stark App. No. 1995CA00424, 1997 WL 116903, this court also reviewed the issue of whether the trial court erred in permitting the jurors to pose questions to the witnesses. In that case, the trial court asked the questions. However, this court found no prejudicial error. We again find no prejudicial error.
 {¶ 17} Thus, we disagree with appellant and find that it was not error for the trial court to allow the jurors to ask questions of the witnesses when using the procedure previously outlined by this court.
 {¶ 18} Based on the foregoing, we find appellant's first assignment of error not well-taken.
 II. {¶ 19} In his second assignment of error, Appellant argues that the trial court committed plain error in allowing the testimony of Scott Craft, Robert Gillies and Angela Wolfe, We disagree.
 {¶ 20} Scott Craft is a staff counsel and court liaison at Mid-Ohio Psychological Services. Mr. Craft testified that during a mental health assessment of Appellant ordered by the Fairfield County Municipal Court, Appellant disclosed a serious threat to harm Theresa Kempton. (T. at 52-54). Mr. Craft testified that he discussed same with his supervisor, and that he believed such threat to be credible. (T. at 55). Mr. Craft further testified that he sent a letter to Theresa Kempton informing her that Appellant had made a "verbal threat to cause [her] serious physical harm when he is release from the Fairfield County Jail." (T. at 68).
 {¶ 21} Robert Gillies is a licensed social worker employed by Crittendon Family Services. (T. at 147). Mr. Gillies testified that he had a telephone conversation with Appellant during which Appellant made a suicidal/homicidal threat to Theresa Kempton. (T. at 156). Based on Mr. Gillies' opinion that Appellant was a clear and present danger, Mr. Gillies took Appellant to NetCare. (T. at 157).
 {¶ 22} Angela Wolfe is a volunteer at Our Place which is a facility for people suffering from mental illness, drug and alcohol problems and/or homelessness. (T. at 355-358). Ms. Wolfe testified that on November 12, 2001, Appellant informed her that he was going to take the children and kill the parents and that he had access to a gun. (T. at 362). Appellant then informed Ms. Wolfe that he was stalking his wife and that she had a civil protection order against him. (T. at 362). Ms. Wolfe testified that she felt that Appellant was a clear and present danger and that she notified Childrens' Services and the Fairfield County Sheriff's office of same. (T. at 369.)
 {¶ 23} Prior to allowing the testimony of any of these three witnesses, the trial court conducted voir dire examinations of each outside the hearing of the jury. Subsequent to such voir dire testimony, the trial court permitted each to testify based on R.C. §2317.02(G)(1)(a) which permits testimony of confidential communication received from a client when the communication indicates a clear and present danger to the client or other persons.
 {¶ 24} Appellant correctly states that our standard of review in this case is plain error. Criminal Rule 52(B) specifically provides that "plain errors or defects effecting substantial rights may be noticed although they were not brought to the attention of the court." In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. Notice of plain error must be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph 3 of the syllabus; State v. D'Ambrosio, 67 Ohio St.3d 185, 191,1993-Ohio-170.
 {¶ 25} The Ohio Supreme Court has previously explained that this rule "places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial": (1) "there must be an error, i.e., a deviation from a legal rule," (2) "the error must be plain," which means that it "must be an `obvious' defect in the trial proceedings," and (3) "the error must have affected `substantial rights,'" which means that "the trial court's error must have affected the outcome of the trial." State v. Barnes, 94 Ohio St.3d 21, 27,2002-Ohio-68.
 {¶ 26} Appellant argues that the trial court was required to exclude the testimony of these three witnesses pursuant to Evid.R. 403(A).
 {¶ 27} Evidence Rule 403(A) provides that evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice. In the instant case, the evidence that appellant was making threats and stalking Theresa Kempton was extremely probative to the issue of whether he was committing the crimes of violating a protection order and menacing by stalking. The court did not err in failing to exclude the evidence pursuant to Evid.R. 403.
 {¶ 28} Appellant's second assignment of error is overruled.
 III., IV. {¶ 29} In his third and fourth assignments of error, Appellant claims that the jury verdicts were against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 30} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 31} In reviewing whether a conviction is against the manifest weight of the evidence, our standard of review is stated as follows: The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Martin (1983), 20 Ohio App.3d 172. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v.Thompkins (1997), 78 Ohio St.3d 380, 387 (quoting State v. Martin (1983), 20 Ohio App.3d 172, 175; see, also, State v. Otten (1986),33 Ohio App.3d 339, 340. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 32} Based upon the evidence in the case sub judice, we cannot say that the jury lost its way so as to create a manifest miscarriage of justice.
 {¶ 33} Count one charged Appellant with violating a protection order. At trial, the jury heard testimony from the victim with regard to the charge of violation of a protection order. The jury also heard evidence which included testimony from Patrolman Adam Locke and Angela Wolfe. Patrolman Locke testified that he collected a note from the victim, Theresa Kempton, on November 12, 2001, that she stated was from Appellant. (T. at 232, 342-348). Angela Wolfe testified that Appellant admitted to her on November 12, 2001 that he was stalking Theresa Kempton daily. (T. at 396). Furthermore, Appellant stipulated that he had a prior conviction for violating a protection order.
 {¶ 34} Based on the foregoing, we find that appellant's convictions were not against the manifest weight of the evidence. The jury, as trier of fact, clearly found the witnesses to be credible witnesses.
 {¶ 35} Appellant's third and fourth assignments of error are, therefore, overruled.
 V. {¶ 36} In his fifth assignment of error, Appellant argues that the court erred by sentencing Appellant to consecutive sentences. We disagree.
 {¶ 37} The authority of this court to hear an appeal from a criminal sentence is governed by statute. R.C. § 2953.08(C) provides for appeal of a consecutive sentence:
 {¶ 38} "(C:). In addition to the right to appeal a sentence granted under division (A) or (B) of this section, a defendant who is convicted of or pleads guilty to a felony may seek leave to appeal a sentence imposed upon the defendant on the basis that the sentencing judge has imposed consecutive sentences under division (E)(3) or (4) of Section 2929.14 of the Revised Code and that the consecutive sentences exceed the maximum prison term allowed by division (A) of that section for the most serious offense of which the defendant was convicted. Upon the filing of a motion under this division, the court of appeals may grant leave to appeal the sentence if the court determines that the allegation included as the basis of the motion is true."
 {¶ 39} As appellant was convicted of one count of violating a protection order, a felony of the fifth degree and one count of menacing by stalking, a felony of the fourth degree, the court had the option of sentencing appellant to a twelve month determinate sentence on count one and an eighteen month sentence on count two. R.C. § 2929.14(A)(1). As the consecutive sentences did not exceed the maximum prison term allowed for the most serious offense of which appellant was convicted, the sentence in the instant case is not appealable pursuant to R.C. §2953.08(C).
 {¶ 40} Thus, the only basis on which appellant can appeal is that the sentence is contrary to law, as provided in R.C. § 2953.08(A)(4). On appellate review, this court may only increase, reduce, or otherwise modify a sentence if it clearly and convincingly finds that the record does not support the sentence, or that the sentence is otherwise contrary to law. R.C. § 2953.08(G)(2).
 {¶ 41} In the instant case, we cannot clearly and convincingly find that the court erred in finding pursuant to R.C. § 2929.14(E) that the harm caused by multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of the offender's conduct, and that consecutive sentences were necessary to protect the public from future crime. The trial court made findings on the record that appellant was on probation at the time of the commission of these offenses. (T. at 20). The court found that appellant had numerous previous violations for assault, domestic violence and violations of protections orders and civil protection orders. (T. at 21). The court found that even though the physical harm was not particularly serious, the harm was traumatic and the psychological harm was extremely serious and unusual. (T. at 21, 22). The court therefore found that this was the most serious form of the offense. The court also stated that it could not determine that Appellant demonstrated any remorse for his actions. (T. at 22). The court further made a finding that the consecutive sentences were necessary to fulfill the purposes of the sentencing statute. (T. at 23).
 {¶ 42} Appellant has not demonstrated clearly and convincingly that the sentence in the instant case was not supported by the record, and was contrary to law.
 {¶ 43} Assignment of Error V is overruled
 {¶ 44} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
By: Boggins, J., Hoffman, P.J. and Wise, J. concur.
Topic: Questioning of jurors; manifest weight, consecutive sentences.